No. 4106

Second Circuit

(Second Division)

## ADGER v. VOLOTO

(December 9, 1931. Opinion and Decree.)

Foster, Hall, Barrett & Smith, of Shreveport, attorneys for plaintiff, appellant.

Blanchard & Pyburn, of Shreveport, attorneys for defendant, appellee.

TALIAFERRO, J. Plaintiff sues to recover damages of defendant for injuries to himself and his Ford coupe caused by a collision with defendant's Packard automobile in or near the intersection of Albany avenue with Kings highway in the city of Shreveport, at the hour of 2 o'clock, p. m., October 20, 1930.

It is alleged by plaintiff that, accompanied by his wife, he drove his automobile along Albany avenue to its intersection with Kings highway, passed through said intersection and drove up said highway on east side towards Shreveport thirty or forty feet, when run into by defendant's car.

It is further alleged that defendant was driving his car left of the center of the highway, the left wheels being off of the paved (central) portion of it; that when

thirty or forty feet from said intersection plaintiff observed that defendant was making no effort to pull over on his (right) side of the highway and "petitioner turned his automobile to his right and had proceeded about 20 feet off of said street when his automobile was struck violently on the left side, between the center of the automobile and the left rear wheel," and that he was knocked unconscious and suffered many wounds on and about his face and mouth, described in detail in the petition.

It is specifically alleged that the direct and proximate cause of said collision, with resultant injury and damage to plaintiff, was due to the negligent, careless, reckless, wrongful and illegal operation by defendant of his said automobile.

Defendant admits the collision of his and plaintiff's cars on the date named, but denies that it happened at the spot and in the manner alleged by plaintiff. He denies that he was on his left side of the highway when the accident occurred and denies that he was traveling at the rate of 35 miles per hour. He avers that he was driving down Kings highway, on his right-hand side, at the rate of 20 miles per hour at time of the accident and that plaintiff suddenly turned into the highway from Albany street, attempting to make a left turn, immediately in front of his (defendant's) moving car, without first ascertaining if he could safely do so, and that his carelessness, negligence and inattention in thus acting was the proximate cause of the collision.

In the alternative, defendant pleads contributory negligence in bar of plaintiff's right to recover, and reconvened for an amount alleged to have been expended for repairs to his car made necessary as a result of the accident.

The district judge rejected the demands of both parties and dismissed plaintiff's suit. He alone has appealed.

Kings highway extends southerly out of the lower section of the city of Shreveport. It carries heavy traffic on account of it being a part of the Jefferson highway which connects Shreveport with the towns and cities of central and south Louisiana. At the point where Albany avenue intersects this highway and for some distance north it describes a broad curve. Albany street or avenue does not extend across the highway. Adjacent to the highway at this point, on east side, there is an intervening grassy space, which recedes into a bayou.

Plaintiff's version of the facts transpiring immediately prior to and at time of the accident is as follows: That he was driving his car at 15 miles per hour in Albany street and when within 200 feet of the intersection with Kings highway he saw defendant's car 500 feet away coming down the curve in the highway; that when he reached the intersection defendant's car was 200 feet north of him; that he passed through the intersection, without stopping, made a left turn up the east (his right) side of the highway and observed defendant approaching him at the rate of 40 miles per hour, also on east side of the highway. We quote the following excerpts from plaintiff's testimony, as they clearly reflect his theory of the case and reveal definitely the ground upon which he stands and hopes to succeed, viz.:

"I remarked to my wife I better get off of the road to avoid an accident, which I did. I cut my car to the right, going out on the grass that was almost even with the road, then I remarked also, as he cut off too, that I must go into the bayou, and a few seconds later he hit me."

"Q. I will ask you, Mr. Adger, if it is not a fact that this collision happened just

after you entered Kings highway off of Albany street?

"A. The collision happened after I made a complete turn towards Shreveport and made thirty feet, then had turned off of the road and gotten ten feet off of the road on the grass, when I was hit by this Packard car.

"Q. Didn't that Packard car hit you just as you drove into King's highway off of Albany street?

"A. No, sir; it hit me after traveling towards Shreveport, having turned across the street and gotten behind a telephone pole."

Plaintiff testified that the paved portion of the highway was forty feet wide where the accident happened.

Mrs. Adger's testimony in the main corroborates that of her husband. She states that plaintiff remarked to her twice regarding the manner of defendant's driving and the location of his car, stating that he would have to get in the bayou to prevent being run into; that the impact of the collision caused the door of the Ford coupe to open and her husband fell out with one foot caught in the car, his body dragging; that she got out of the car and extricated his foot from its fastening, and then the car, having been knocked around, "went into the bayou" backwards; that plaintiff was removed to the sanitarium for treatment, and remained there for three days. She is positive plaintiff's car was off of the highway—ten feet over on the grass—when struck by defendant's car, and going towards the bayou. She did not see defendant's car until her husband called her attention to it "just after he turned into Kings highway," and that they had gone about thirty feet up the highway when plaintiff again called her attention to defendant's car approaching them, and he then turned his car to his right, going towards the bayou. She is also positive both cars were off of the road when contact was had.

Mrs. R. C. Fulton, who lives in the block west of Albany street, as a witness for plaintiff, stated that she was on her front porch when the cars collided and the noise of the impact attracted her attention in that direction; that both cars were moving when she first observed them. The following testimony given by her we think very significant when considered in connection with the question of the location of the cars at moment of collision:

"Q. Did you see the Packard car, that was the car of the defendant, just at the instant of the impact?

"A. Yes, sir; I did.

"Q. What happened to that car after it hit Mr. Adger's car?

"A. It drove on down the road.

"Q. How far?

"A. **Drove clear across the street, Albany street,** because when he stopped he was almost opposite the house on the corner."

She was positive that no car was closely following that of defendant when the collision occurred.

It is well here to state that there is really no dispute as to to the spot where defendant's car stopped after the accident. Defendant kept it under control, though the bumper was damaged and pressed against a casing, and stopped it on the grass on the east side of Kings highway a short distance from the intersection.

Defendant testified that he lived on Kings highway; that he farms, and at time of accident operated a bus for the Caddo parish school board, and had been doing so for eleven years, and had never experienced an automobile accident or collision prior to that with plaintiff; that at time of the accident he was returning home from a sanitarium in the city of Shreveport, where one of his boys was a patient; that when in the curve of the highway about Dr. Stamper's residence he

was stopped by an acquaintance named D. C. Gibson and they discussed some business matter for ten or fifteen minutes, and then proceeded down the highway, on his right-hand side, towards Albany street; that he saw plaintiff coming out of this street at a rapid rate of speed and slowed his car down, but that plaintiff undertook to make a left turn at the intersection, headed towards him; and the collision happened; that after the collision he "swung his car around a little and threw it on the grass and killed the motor"; that he then placed plaintiff in his (defendant's) own car with the intention of carrying him to a hospital but finding the injury to the car such as to interfere with its free running he transferred plaintiff to the car of a friend who was passing, who drove him to a sanitarium. He further testified that the Ford coupe was turned around as a result of the collision and backed into the bayou on east side of the highway; that plaintiff fell out of his car on the highway and that he paid out $28 to have his own car repaired.

D. C. Gibson testified as a witness for defendant. He lives in the city of Alexandria, La., and had known defendant for six or seven years. He is a contractor, engaged in the erection of buildings, and at time of accident he was some fifty or seventy-five feet above defendant, on the west (his right) side of Kings highway, en route home in his own car; that he stopped defendant on the highway a few minutes prior to and about a block from the scene of the accident, and they discussed some business matter; that when the talk was over defendant preceded him down the highway towards Albany street; that his attention was attracted first towards the place of accident by the sound of a car's horn and he saw defendant's car hit plaintiff's and "knock it around," and witness then stopped his car. He is positive defendant's car was in front of his own, traveling 18 or 20 miles per hour, on the right-hand side of the highway. He saw plaintiff and wife get out of their car. He thought they jumped out of it as it rolled towards the bayou, but was not certain on this point.

Other witnesses testified in the case but their evidence has no material bearing upon the question of negligence causing the accident.

As obviously appears from the foregoing analysis of the testimony it is hopelessly irreconcilable. If plaintiff's evidence is correct, the cause of the collision lies not only in defendant being on the wrong side of the road but in pursuing plaintiff's car with his own after plaintiff had quit the road and taken to the grassy plot between the highway and the bayou. We are unable to bring ourselves to the conclusion that the accident happened in this manner. Many accidents happen because of people violating the rule of the road requiring them to drive on their own right-hand side, but this is the first case coming to our knowledge wherein it is contended that one automobile, while in a position of safety, was driven entirely off of the road, seemingly for no other purpose than of colliding with another one.

Mrs. Fulton's evidence, while a witness for plaintiff, really corroborates the evidence of defendant and his witness Gibson, with respect to the relative position of the cars at the moment of collision. She states that defendant's car, immediately after the accident, crossed Albany street and stopped on the opposite side. Albany street ends with its juncture with Kings highway. Therefore, if defendant's car

crossed this street and stopped on the opposite side of the highway it almost certainly follows that it must have been above the street and on the right-hand side of the highway when the cars collided. The Packard car was much heavier than the Ford coupe of defendant and this contrast in weight accounts for the movement of the cars after accident. Defendant's was not forced out of its line of travel to any great extent, while that of plaintiff was knocked around and moved backwards towards the bayou.

If plaintiff is in error as to how the accident happened, and we think he is, it logically follows that defendant's version of how it occurred is correct. Defendant was traveling a street or highway much more used by traffic than the one plaintiff was on. Plaintiff admits that he did not stop his car at the intersection. It was his duty to do this and wait until it was clearly safe for him to proceed. The fact that the collision occurred in the intersection is convincing proof that defendant's car was approaching it within such distance as to have impressed plaintiff with the necessity of exercising the utmost care and caution to obviate a collision. As defendant was traveling on a street much more used for traffic than was the side street plaintiff was on, he had the right of way at the intersection, when it was obvious to plaintiff that a collision was probable should he undertake to cross to the opposite side of the highway in front of defendant's moving car.

Defendant's reconventional demand was rejected. He has not asked for any relief from the judgment against him.

For the reasons herein assigned it is ordered that the judgment appealed from be affirmed.